UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES ON BEHALF OF GENERAL EMPLOYEES TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>ALEPH MAINTENANCE, INC.,<br><br>Defendant. | Case No. 24-cv-04500-KAW<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT; ORDER ASSIGNING CASE TO DISTRICT JUDGE**<br><br>Re: Dkt. No. 63 |

On July 25, 2024, Plaintiff Trustees on Behalf of General Employees Trust Fund filed the instant case against Defendant Aleph Maintenance, Inc., alleging violations of the Employee Retirement Income Security Act ("ERISA"). (Compl., Dkt. No. 1.) Pending before the Court is Plaintiff's motion for default judgment, in which Plaintiff seeks unpaid contributions and associated interest, liquidated damages, audit fees, and attorney's fees and costs. (Mot. for Default J. at 1, Dkt. No. 63-1.) Defendant has not formally appeared in this case, and default was entered on August 8, 2025. (Dkt. No. 60.)

On November 20, 2025, the Court held a hearing, but Defendant did not appear. (Dkt. No. 69.) Since Defendant, by virtue of being in default, has not consented to magistrate judge jurisdiction, the Court REASSIGNS this action to a district judge with the RECOMMENDATION that Plaintiff's motion for default judgment be GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND

Plaintiff is the fiduciary of General Employees Trust Fund ("Trust Fund"), an employee benefit plan within the meaning of 29 U.S.C. §§ 1002, 1132(a)(3), and 1132(d). (First Amended Compl. ("FAC") ¶ 4, Dkt. No. 48.) From May 1, 2016 to April 30, 2024, Defendant was a signatory to the Northern California Maintenance Contractors Agreement, a multi-employer

collective bargaining agreement ("CBA") with the Service Employees International Union, United Service Workers West (the "Union"), located in Alameda and Los Angeles, California.  (FAC ¶ 9; Schechter Decl., Exhs. 5-B ("2016-2020 CBA") & 5-C ("2020-2024 CBA"), Dkt. No. 63-2.)

The CBAs require an employer to make health and welfare contributions to the Trust Fund on behalf of its covered employees.  (FAC ¶ 9; 2016-2020 CBA at Art. XIII; 2020-2024 CBA at Art. XIII.)  The CBAs further require an employer to comply with the Trust Agreement.  (2016-2020 CBA ¶ 13.2; 2020-2024 CBA ¶ 13.2.)  The Trust Agreement, in turn, provides that unpaid contributions are subject to simple interest of 7% per annum, as well as liquidated damages of 20% if the contributions are still unpaid as of the initiation of litigation.  (Schechter Decl., Exh. 5-A ("Trust Agreement") §§ 8.05, 8.06(b).)  The Trust Agreement also permits audits of employer records, and requires that the employer pay for the audit if they fail to provide the required documents.  (Trust Agreement § 8.13(c).)  Finally, the Trust Agreement provides for the payment of attorney's fees, costs, and audit fees should litigation be required to enforce collection.  (Trust Agreement § 8.07.)

On October 9, 2023, the Trust Fund's auditor requested in writing that Defendant provide payroll records for the period of January 1, 2020 through December 31, 2023, as well as complete a pre-audit questionnaire.  (FAC ¶ 19.)  Defendant did not respond.  (FAC ¶ 19.)  Thereafter, Plaintiff's counsel made multiple written demands that Defendant provide the requested records to the Trust Fund's auditor, to which Defendant failed to respond.  (FAC ¶ 20.)

On July 25, 2024, Plaintiff originally filed this case to compel Defendant to comply with an audit for the period of January 1, 2020 through December 31, 2023.  (Compl. ¶¶ 13, 24.)  On August 7, 2024, Plaintiff served Defendant by personally serving Defendant's registered agent for service.  (Dkt. No. 7.)  After Defendant failed to respond, Plaintiff requested entry of default on August 28, 2024.  (Dkt. No. 8.)  On September 5, 2024, the Clerk entered default as to Defendant.  (Dkt. No. 9.)

On September 20, 2024, Plaintiff filed a motion for default judgment.  (Dkt. No. 11.)  On November 7, 2024, the Court held a hearing on Plaintiff's motion for default judgment, at which Defendant appeared.  (Dkt. No. 22.)  The parties then attempted to resolve the matter, which

1    included Defendant providing the requested records to Plaintiff's auditor.  (*See* FAC ¶ 22; Dkt.
2    Nos. 23, 26, 30.)
3            On February 26, 2025, Plaintiff's auditor sent a copy of the preliminary audit report to
4    Defendant, which identified $14,344.34 in underpaid contributions.  (FAC ¶ 23.)  Defendant did
5    not dispute the findings.  (FAC ¶ 24.)  On March 14, 2025, Plaintiff's counsel sent a copy of the
6    final audit report to Defendant, and requested payment of $14,344.34 in underpaid contributions,
7    $1,434.43 in liquidated damages, $2,303.10 in interest, and $1,290 in audit testing fees, as well as
8    attorney's fees and costs.  (FAC ¶ 25.)  Although the parties attempted to negotiate the matter,
9    Defendant ultimately failed to make any of the payments owed.  (FAC ¶ 26.)
10           On June 5, 2025, Plaintiff filed the operative complaint, seeking the underpaid
11   contributions, liquidated damages, interest, audit fees, and attorney's fees and costs.  On June 10,
12   2025, Plaintiff personally served Defendant's agent for service with the complaint.  (Dkt. No. 53.)
13   On June 26, 2025, Plaintiff sought entry of default; default was declined, however, because 21
14   days had not elapsed since service and no summons had been returned as executed.  (Dkt. Nos. 54,
15   55.)  After Plaintiff obtained new summons, Plaintiff again personally served Defendant's agent
16   for service with the complaint on July 11, 2025.  (Dkt. No. 58.)  On August 5, 2025, Plaintiff
17   sought entry of default.  (Dkt. No. 59.)  On August 8, 2025, default was entered as to Defendant.
18   (Dkt. No. 60.)
19           On September 18, 2025, Plaintiff filed the instant motion for default judgment.  Plaintiff
20   served the motion on Defendant.  (Dkt. No. 63-5.)  On October 9, 2025, Plaintiff served its
21   proposed order on Defendant.  (Dkt. No. 66 at 11.)  To date, Defendant has neither appeared nor
22   filed an opposition to Plaintiff's motion for default judgment.

## II.    LEGAL STANDARD

24           Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case
25   following a defendant's default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d
26   995, 999 (N.D. Cal. 2001).  Whether to enter a judgment lies within the court's discretion.  *Id.* at
27   999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).
28           Before assessing the merits of a default judgment, a court must confirm that it has subject

1  matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the
2  adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the
3  court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to
4  determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III.  DISCUSSION

#### A.  Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

##### i.  Subject Matter Jurisdiction

In this action, Plaintiff asserts claims to enforce the terms of their Agreements and to enforce provisions of ERISA. This Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 1132, which provides that plan fiduciaries can bring civil actions to enforce the terms of the plan. Further, jurisdiction exists in this Court over all claims by virtue of the Labor Management Relations Act, 29 U.S.C. § 141 et seq. ("LMRA"), specifically 29 U.S.C. § 185, as Plaintiff seeks to enforce the terms and conditions of a collective bargaining agreement.

##### ii.  Personal Jurisdiction

4

The Court can exercise personal jurisdiction over Defendant pursuant to ERISA § 502(e)(2). Under § 502(e)(2), an action may be brought against a defendant:

> … in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261 (9th Cir. 1992); *Schuett v. FedEx Corporation Retirement Appeals Comm.*, 2015 WL 4484153, at *5 (N.D. Cal. July 22, 2015) ("service on a defendant in an ERISA case anywhere in the United States is sufficient to establish personal jurisdiction, and there is no need to engage in the 'minimum contacts' analysis") (emphasis added); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

Venue is conferred upon this court by ERISA § 502, 29 U.S.C. § 1132. Where an action is brought under § 502 in a district court of the United States, it may be brought at Plaintiff's discretion, in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. Here, the relevant CBAs were with the Union, located in Alameda and Los Angeles, California. (FAC ¶ 9.) Because the acts and/or omissions alleged herein arose in the County of Alameda, this matter is properly assigned to this district.

### iii. Service of Process

A domestic corporation may be served by delivering a copy of the summons and the complaint to the agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiff personally served the summons and complaint on Defendant's registered agent. (Dkt. No. 58.) After Defendant failed to answer the complaint, default was entered by the Clerk's Office on August 8, 2025. (Dkt. No. 60.)

## B. Application to the case at bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

### i. Prejudice to Plaintiff

Federal courts have exclusive jurisdiction for claims arising under ERISA, so denial of

5

Plaintiff's motion would leave them without a remedy. *Bd. of Trustees of U.A. Local No. 159 Health & Welfare Trust Fund v. RT/DT, Inc.*, C 12-05111 JSW, 2013 WL 2237871 at *4 (N.D. Cal. May 21, 2013). Plaintiff would, therefore, be prejudiced if the Court did not enter default judgment.

### ii. Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. A party seeking default judgment must state a valid claim upon which it may recover. *Walters v. Statewide Concrete Barrier, Inc.*, 2005 U.S. Dist. LEXIS 49433, at *8 (N.D. Cal. Sept. 2, 2005).

Here, Defendant entered into the CBAs, which required Defendant to make health and welfare contributions to the Trust Fund on behalf of its covered employees. (2016-2020 CBA at Art. XIII; 2020-2024 CBA at Art. XIII.) The CBAs further require an employer to comply with the Trust Agreement. (2016-2020 CBA ¶ 13.2; 2020-2024 CBA ¶ 13.2.) Defendant has failed to pay the contributions found owed by an audit of Defendant's records. (FAC ¶ 26.) Thus, the Court finds that Plaintiff has sufficiently stated a claim for relief under ERISA.

### iii. Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997). A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the Court may consider a plaintiff's declarations, calculations, and other documentation of damages. *Id*.

Here, Plaintiff seeks estimated contributions in the amount of $14,344.23, liquidated

damages of $2,868.87, interest in the amount of $2,554.13, audit testing fees in the amount of $1,290.00, attorney's fees in the amount of $26,970.00, and costs in the amount of $2,057.13. (Mot. for Default J. at 10.) After some adjustments as discussed below, the Court concludes that the amount sought is reasonable because it is based on the contractual terms of the CBAs and Trust Agreements, which Defendants agreed to and under which Defendants are now liable. Accordingly, this factor weighs in favor of default judgment.

### iv. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Although Defendant informally appeared in this action, Defendant has not made any attempt to contest any of Plaintiff's material facts or legal assertions or moved to set aside the entry of default. Thus, the possibility of a dispute regarding Defendant's liability for damages is unlikely.

Thus, this factor weighs in favor of default judgment.

### v. Whether Default was a Result of Excusable Neglect

The sixth *Eitel* factor contemplates the possibility that Defendant's default was the result of excusable neglect. Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise it of the pendency of the action brought against it. *Phillip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). In addition, the Court also considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

Here, Defendant clearly knows about the action, as Defendant appeared at the hearing on the initial motion for default judgment. (*See* Dkt. No. 22.) Defendant then participated in the audit and attempted to settle the case, which apparently failed due to Defendant's insistence that it would only pay via credit card. (Dkt. Nos. 30, 45.) After the complaint was amended, Defendant was personally served with the complaint and summons. (Dkt. No. 58.) Defendant has also been served with the entry of default and this motion for default judgment, but has still failed to appear

7

in this action. (Dkt. Nos. 61, 63-5.) Consequently, there is nothing to suggest that Defendant's failure to appear and litigate this matter is based on excusable neglect.

### vi. Federal Rules Preference for a Decision on the Merits

After an examination of these facts in the aggregate, this Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. The Court therefore recommends that default judgment be granted.

## IV. DAMAGES AND INJUNCTIVE RELIEF

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

### A. Contributions

29 U.S.C. § 1145 provides that every employer who is obligated to make contributions under a collective bargaining agreement shall make them in accordance with the terms of such agreement. When a benefit plan wins a judgment in an action to enforce § 1145, § 1132 provides that the plan is entitled to unpaid contributions, interest thereon, reasonable attorney's fees and costs, and "an amount equal to the greater of" the "interest on the unpaid contributions" or liquidated damages as specified in the plan. The liquidated damages provision, as set forth in § 1132(g)(2)(C), applies when: (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages. *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). Statutory liquidated damages are mandatory where factors (1)-(3) above are satisfied. *Id.* at 215.

Here, per the audit, Defendant has failed to pay contributions of $14,344.34. (Schechter Decl., Exh. 5-D, Dkt. No. 63-2.) Thus, Plaintiff is entitled to $14.344.34 in unpaid contributions.

### B. Liquidated Damages

An award of liquidated damages under § 1132(g)(2) is "mandatory and not discretionary." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.,* 746 F.2d 557, 569 (9th Cir.1984). A plaintiff is entitled to a mandatory award under § 1132(g)(2) if the following requirements are met: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.,* 104 F.3d 253, 257 (9th Cir. 1996). Any liquidated damages provided in a trust agreement cannot be in excess of 20% of the amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

Here, Plaintiff has satisfied the requirements for an award of liquidated damages under § 1132(g)(2). First, Plaintiff alleges that Defendant was delinquent in making their contractually obligated payment contributions. (FAC ¶ 26.) Second, the Trust Agreements authorize the award of liquidated damages. (FAC ¶ 14.) Pursuant to the terms of the Trust Agreements, liquidated damages are calculated at 10% of the delinquent contributions prior to litigation and 20% after litigation has been initiated. (FAC ¶ 14; Trust Agreement § 8.06(b).)

Because Defendants have unpaid contributions, Plaintiffs are entitled to liquidated damages of 20%. This amounts to $2,868.87.

### C. Interest

Plaintiff seeks $2,554.13 in interest on the unpaid contributions. (Mot. for Default J. at 10.) Section 1132(g)(2) permits a plan fiduciary to collect interest on all delinquent contributions once they have prevailed on a § 1145 claim. 29 U.S.C. § 1132(g)(2).

Interest accrues at simple interest of 7% per annum from the date that the contributions were due until paid. (FAC ¶ 12; Trust Agreement § 8.05.) Per the audit, Plaintiff is entitled to this amount. (*See* Schechter Decl., Exh. 5-E.)

### D. Audit Fees

Plaintiff seeks $1,290.00 in audit testing fees. The Trust Agreement provides for the payment of audit fees should litigation be required to enforce collection. (Trust Agreement § 8.07.) Thus, Plaintiff is entitled to this amount.

**E.  Attorney's Fees and Costs**

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorneys' fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. 29 U.S.C. § 1132 (g)(2)(D); *Nw. Adm'rs, Inc.*, 104 F.3d at 253, 258. Similarly, the Trust Agreement provides that Defendant must reimburse Plaintiff for attorney's fees, audit fees, costs, and all other expenses incurred in connection with the collection of delinquent contributions. (Trust Agreement § 8.07.)

Here, Plaintiff seeks reimbursement of attorney's fees of $26,970.00 and costs of $2,057.13, as supported by a declaration from Plaintiff's counsel. (Mot. for Default J. at 9.)

1. Costs

Plaintiff seeks reimbursement of costs in the amount of $2,057.13. (Schechter Decl., Exh. 2.) Costs were incurred for the filing fees and multiple attempts at service of the complaint, as well as Pacer costs. (Schechter Decl., Exh. 2.)

The Court finds that these costs are reasonable except for the June 5, 2025 ($228.12) and June 6, 2025 ($282.15) costs for service. These costs appear to be related to service on June 6 and 10, 2025, in which Plaintiff failed to properly serve Defendant with a summons. (*See* Dkt. Nos. 51, 53.) Plaintiff will not be compensated for service that was done in error. Costs for other service that was proper, including on July 11, 2025, is compensable.

Accordingly, the Court finds Plaintiff is entitled to $1,546.86 in costs.

2. Attorney's Fees Incurred

Under ERISA § 1132(g)(2), fee awards are mandatory, but courts should consider the reasonableness of these fees. *Kemmis v. McGoldrick,* 706 F.2d 993, 997-98 (9th Cir.1983) (stating that § 1132(g)(2) "makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions"). The Ninth Circuit has articulated five factors that should be considered in determining reasonable attorney fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all

10

participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980). These factors are intended to guide the court in its discretion, but none of the factors are dispositive; any combination can support an award of fees. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.,* 25 F.3d 743, 749 (9th Cir. 1994).

Here, the award of attorney's fees would deter other employers from becoming delinquent on employee contributions because fees can add greatly to the amount of unpaid contributions. An award of fees further encourages employers to be more diligent in their record keeping and prompt with their payment. Further, Plaintiff's claim has been adequately supported and the merits of their position are well-grounded. Accordingly, the Court finds that the above factors weigh in favor of awarding attorney's fees.

Once fees under ERISA are awarded, the court must calculate the lodestar amount to assess the reasonableness of attorney's fees. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. The lodestar amount is determined by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* (internal quotations omitted). In awarding attorney's fees, courts must look to the prevailing market rates in the relevant community. *Bell v. Clackamas Cnty.,* 341 F.3d 858, 860 (9th Cir. 2003).

*a. Reasonableness of the Hourly Billing Rate*

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir.2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiff's claimed hourly rate range is $300 per hour. (Schechter Decl. ¶ 8.) Plaintiff's hourly rates are within the range found reasonable in ERISA actions by other judges in the Northern District. *See, e.g., Bd. of Trustees v. Diversified Concrete Cutting, Inc.,* No. 17-CV-06938-MEJ, 2018 WL 3241040, at *7 (N.D. Cal. July 3, 2018), *report and recommendation adopted sub nom. Bd. of Trustees as Trustees of Laborers Health & Welfare Tr. Fund for N.*

*California v. Diversified Concrete Cutting, Inc.,* No. 17-CV-06938-RS, 2018 WL 4775429 (N.D. Cal. July 27, 2018) (finding hourly rates of $345 reasonable in ERISA case). Considering the experience of counsel, the Court finds that the hourly rates are reasonable and consistent with the prevailing market rates in the Northern District.

### b. Reasonableness of the Hours Billed

Next, the Court considers the reasonableness of the hours billed. To assess whether the number of hours billed is reasonable, Plaintiff must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986).

After reviewing counsel's declaration and the billing records detailing the tasks completed and time spent in this matter, the Court has significant concerns that there is substantial overbilling. For example, Plaintiff has multiple entries dedicated to generic entries such as "Review court docket" and "Review status of litigation matter," even though no active litigation was occurring outside of Plaintiff's filings (as Defendant was in default). Plaintiff's counsel also claimed 8.9 hours to prepare a 9-page proposed order on the original motion for default judgment, even though a substantial portion was almost identical to the motion for default judgment. (*Compare* Dkt. No. 11-1 at 3-4 *with* Dkt. No. 18 at 3-4; Dkt. No. 11-1 at 5-7 *with* Dkt. No. 18 at 4-6.) Other entries reflect time disproportionately spent on simple tasks, including multiple entries spending .2 to .3 hours to review one-sentence long text-only entries or a Clerk's Notice setting a hearing for Zoom, as well as over an hour spent on two to three-paragraph status reports. Additionally, as above, Plaintiff's counsel seeks attorney's fees related to the improper service of the amended complaint, as well as seeking entry of default (which was not only based on the improper service, but was filed before the 21-day responsive pleading deadline had elapsed). Accordingly, the Court includes a chart of the recommended reductions.

| Date: | Entry: | Time Claimed: | Deduction: | Explanation: |
|---|---|---|---|---|
| 8/13/24 | Review file and docket regarding upcoming deadlines. | .2 | .2 | Non-compensable administrative task. *CNC Software, Ltd. Liab. Co. v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-cv-02488-EMC, 2023 U.S. Dist. LEXIS |

12

| Date | Description | Hours | Adj. | Notes |
|---|---|---|---|---|
| | | | | 83880, at *26 (N.D. Cal. May 12, 2023) (reducing time spent for clerical tasks including calendaring) |
| 8/30/24 | Review court docket. | .1 | .1 | Lacks specificity. |
| 9/5/24 | Review status of litigation. | .2 | .2 | Lacks specificity. |
| 9/9/24 | Review status of litigation matter. | .3 | .3 | Lacks specificity. |
| 9/25/24 | Review status of litigation matter. | .3 | .3 | Lacks specificity. |
| 10/1/24-10/10/24 | Prepare, revise, and finalize proposed judgment | 8.9 | 7.4 | 8.9 hours to prepare proposed order that included substantial copying and pasting from motion and was substantively similar is unreasonable. |
| 10/2/24 | Review status of pending default judgment matter. | .3 | .3 | Lacks specificity. No filings since 9/23/24. |
| 10/18/24 | Review Notice from court regarding Case Management Conference. | .2 | .1 | 1-sentence, text-only entry vacating case management conference. |
| 10/18/24 | Review status of litigation matter. | .4 | .4 | Lacks specificity. |
| 10/23/24 | Review court docket. | .1 | .1 | Lacks specificity. No filings since 10/18/24. |
| 11/1/24 | Review Notice from court regarding hearing date. | .2 | .1 | Text-only entry including Zoom information for hearing. |
| 11/27/24 | Review status of litigation matter. | .2 | .2 | Lacks specificity. |
| 1/7/25 | Review status of litigation matter. | .2 | .2 | Lacks specificity. |
| 1/9/25 | Review status of litigation matter. | .1 | .1 | Lacks specificity. |
| 1/27/25 | Review status of litigation deadlines. | .4 | .4 | Calendaring. No deadlines issued since 12/5/24 (covered by separate entry). |
| 2/3/25 | Review Clerks Notice Regarding Case Management Conference and Plaintiff's Status Report. | .3 | .3 | Unclear; no clerk's notice issued since 11/1/24. |
| 2/5/25 | Review status report | .3 | .2 | 1-sentence text-only entry. |

13

| Date | Task | Hours Billed | Hours Reduced | Reason |
|---|---|---|---|---|
| | order and new deadline. | | | |
| 4/8/25 | Review status of litigation matter. | .2 | .2 | Lacks specificity. |
| 5/2/25-5/3/25 | Prepare/review further status report | .9 | .7 | 4-sentence status report. Additional time spent on 5/5/25. |
| 5/22/25-5/23/25 | Prepare, review, revise status report | 1.4 | 1.0 | 6-sentence status report. |
| 6/6/25 | Review Proof of Service submitted by process server. | .3 | .3 | Improper service. |
| 6/25/25 | Prepare Request for Entry of Default and supporting Declaration. | .8 | .8 | Improper service. |
| 6/30/25/25 | Review notice from court regarding request for entry of default. | .2 | .2 | Improper service. |
| 7/16/25 | Email correspondence with process server regarding proof of service; file proof of service | .5 | .1 | Non-compensable administrative task. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (agreeing that the "filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates"). |
| 7/31/25 | Review docket updates. | .4 | .4 | Lacks specificity. No filings since Plaintiff's 7/16 filing. |
| **Total Reductions:** | | | **14.6 hours x $300 = $4,380.00** | |

Thus, the Court finds a reduction of 14.6 hours ($4,380.00) is appropriate, leaving $21,390.00 ($25,770.00-$4,380.00). In addition, given the considerable amount of overbilling identified above, the Court also recommends that this total amount of attorney's fees be reduced by an additional 10%, or $2,139.00. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("the district court can impose a small reduction, no greater than 10 percent--a 'haircut'--based on its exercise of discretion and without a more specific explanation").

Accordingly, the Court recommends that Plaintiff's counsel be awarded $19,251.00 ($21,390.00-$2,1390.00).

14

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's motion for default judgment against Defendant be GRANTED IN PART AND DENIED IN PART. The Court recommends that the following amounts be awarded:

| | |
|---|---:|
| **Contributions:** | $14,344.34 |
| **Liquidated Damages:** | $2,868.87 |
| **Interest:** | $2,554.13 |
| **Audit Fees:** | $1,290.00 |
| **Attorney's Fees:** | $19,251.00 |
| **Costs:** | $1,546.86 |
| **TOTAL:** | **$41,855.20** |

Finally, no later than 3 days from the date of this report and recommendation, Plaintiff is instructed to serve Defendant with a copy by any means reasonably calculated to provide actual notice, and file proof of service to that effect.

Any party may file objections to these recommendations within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b); *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: November 28, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge